RICK D. NAVARRETTE (CA Bar No. 122653)
rnavarrette@fbtlaw.com
FROST BROWN TODD LLP
633 W. Fifth Street, Suite 900
Los Angeles, CA 90071
Tel: (213) 229-2400
Fax: (213) 229-2499

Attorneys for Plaintiffs
Kiari Cephus, professionally known as
"Offset" and Sallie Smith, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIARI CEPHUS, professionally known as "Offset"; and SALLIE SMITH, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CHASE DALTON ROSE, professionally known as "CHASETHEMONEY,"; and DOES 1 through 25, inclusive. <br><br> Defendants. | **CASE NO.:** <br><br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

## I. Introduction

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, seeking a judicial determination of the rights and obligations of the parties under a Producer Agreement between Plaintiff and Defendant.

## II. Jurisdiction and Venue

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

3. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III. Parties

4. Plaintiff Kiari Cephus, professionally known as "Offset", is an individual residing in the State of Georgia.

5. Plaintiff Sallie Smith, LLC ("Sallie Smith") is a foreign limited liability company with the State of Georgia and doing business at 3550 Lenox Rd suite 2075, Atlanta, Georgia, 30326.

6. Defendant Chase Dalton Rose, professionally known as "CHASETHEMONEY," is an individual residing in the State of California.

## IV. Factual Background

7. Plaintiff Offset is a world-famous recording artist and songwriter and was a member of the prominent Atlanta, Georgia based hip-hop group "Migos" before the group disbanded around 2022.

8. Plaintiff Sallie Smith was formed in 2017 as a limited liability company to furnish the services of Offset as a recording artist and to engage producers, remixers, mixers and other vendors to assist Offset in creating, recording and producing sound recordings and audiovisual recordings among other materials for commercial release.

9. In 2017, Offset entered into an exclusive recording agreement with Motown Records, a division UMG Recordings, Inc. ("Motown") to create, record and commercially release sound recordings embodying the recorded performances of Offset and others ("Offset Recording Agreement").

10. In 2022 and early 2023, Offset began strategizing for the release of his solo album entitled, *Set It Off* (the "Album"), which was released on October 13, 2023.

11. During this time, Offset and his A&R team came into contact with CHASETHEMONEY and discussed the possibility of CHASETHEMONEY producing a sound recording of a musical composition for Offset which would embody the recorded performances of Offset and potentially other professional recording artists, and would be a part of the Album.

12. The recording embodying the musical composition which CHASETHEMONEY would go on to produce for Offset was eventually entitled, "*Worth It*" (the "Composition", and the sound recording thereof, the "Recording", respectively).

13. Once it was confirmed that the Recording would be included on the Album, on or around July or August of 2023, CHASETHEMONEY advised Offset's A&R team via text message that a person named, "J. Hill" ("J. Hill") was CHASETHEMONEY's manager and that CHASETHEMONEY would let J. Hill "figure logistics" with respect to the Recording and Composition and clearing CHASETHEMONEY's contributions to the same.

14. On or about August 25, 2023, Offset, through his attorney, contacted J. Hill to seek confirmation that J. Hill represented CHASETHEMONEY as his manager. In an email of the same date, J. Hill responded to Offset's attorney's email, "Yes, I do."

15. Offset's attorney notified J Hill in his email that he represented Offset, and he understood that CHASETHEMONEY had co-produced the Recording with

another producer professionally known as "Heavy Mellow" ("Co-Producer") and that the Recording was slated to be included in Offset's upcoming Album. Offset's attorney further notified J. Hill that he wanted to confirm "producer terms" with J. Hill on behalf of CHASETHEMONEY, with the understanding, per industry custom, that these "producer terms" would be memorialized in a standard long-form producer agreement at a later time with customary industry terms (e.g., royalty calculations, grant of rights, transferring ownership of the Recording to Sallie Smith as a "work-for-hire", payment schedule of any advance or fee payable, accounting provisions, etc.).

16. After various rounds of negotiations via email, on October 5, 2023, Sallie Smith and Offset entered into a valid, binding and enforceable agreement with CHASETHEMONEY (the "Producer Agreement") with respect to CHASETHEMONEY's production services in connection with the Recording as reflected in an email from J Hill in response to Offset's attorney email dated October 5, 2023, confirming J Hill's acceptance on behalf of CHASETHEMONEY of the material terms of the Producer Agreement.

17. Under the Producer Agreement, Offset's attorney, on behalf of Sallie Smith and Offset, and J Hill, on behalf of CHASETHEMONEY, agreed that a total producer fee in the amount of $20,000 (the "Producer Fee") and a 4% royalty ("Producer Royalty") would be divided equally and payable to CHASETHEMONEY and Co-Producer.

18. Pursuant to the Producer Agreement, CHASETHEMONEY was to perform customary producer services for one (1) sound recording embodying Offset's performance (i.e., the Recording embodying the Composition). Offset, through his limited liability company, Sallie Smith, agreed to pay CHASETHEMONEY 50% of the Producer Fee equal to $10,000, and 50% of the Producer Royalty equal to 2%. Moreover, the parties agreed that 50% of the Producer Fee would be deemed recording cost, as defined under the Offset Recording Agreement, and 50% the

Producer Fee would be deemed an advance recoupable from the Producer Royalty payable to CHASETHEMONEY.

19. CHASETHEMONEY's consent and approval of the Producer Agreement terms were confirmed in writing, on or about October 5, 2023, by his authorized manager and agent, J. Hill, prior to the commercial release of the Album. The Album included the Recording. Offset and Motown released the Album, pursuant to the Offset Recording Agreement, in reliance on J Hill's representation and confirmation that he represented CHASETHEMONEY as a manager and agent and had authority to agree to the terms of the Producer Agreement on behalf of CHASETHEMONEY, as well as in detrimental reliance on CHASETHEMONEY's conduct and actions in that CHASETHEMONEY directed Offset's A&R team to speak to J Hill regarding the Recording and CHASETHEMONEY referred to J Hill as his manager. The representations, statements, conduct and actions by CHASETHEMONEY and J Hill caused Offset to believe that an agreement was made between the parties with respect to CHASETHEMONEY's services as a producer of the Recording.

20. In January of 2024, over 3 months after the material terms of the Producer Agreement had been agreed upon and the commercial release of the Recording, CHASETHEMONEY's attorney informed Offset's attorney that CHASETHEMONEY had a new manager by the name of Will Boyette ("Boyette"). The new manager proposed new terms for the Producer Agreement, including a producer fee that was more than five times the amount of the Producer Fee that was agreed upon, and a royalty percentage more than double the Producer Royalty that was agreed upon. Offset's attorney promptly responded that the terms of the Producer Agreement had been agreed upon prior to the commercial release of the Album and would not be re-negotiated.

21. Offset's attorney sent a draft of the long-form Producer Agreement to CHASETHEMONEY's attorney in February of 2024, which such document, among other things, contained the agreed upon terms and conditions of compensation for

CHASETHEMONEY as producer of the Recording. CHASETHEMONEY's attorney responded with yet another "proposal" which was materially different than the terms that had been previously proposed by Boyette. Offset's attorney rejected that materially different proposal as well, re-emphasizing that the material terms of the Producer Agreement were already agreed upon.

22. From February 2024 through July 2024, the parties through their respective counsel, exchanged several redlined versions of the long-form Producer Agreement. Each of the redline versions of the long-form Producer Agreement from CHASETHEMONEY's attorney contained different proposals as to the financial terms, none of which were accepted by Offset.

23. On or about July 24, 2024, CHASETHEMONEY's attorney informed Offset's attorney for the first time that CHASETHEMONEY was claiming that J Hill was not his manager in October of 2023 when J Hill agreed to the material terms of the Producer Agreement on behalf of CHASETHEMONEY. However, the true facts were that (1) CHASETHEMONEY referred to J Hill as his manager in various correspondence to Offset and his A&R team, (2) CHASETHEMONEY directed Offset and his A&R team to discuss the clearance of the Recording with J Hill on CHASETHMONEY's behalf, (3) J Hill had confirmed in writing that he represented CHASETHEMONEY as his manager, and (4) no person affiliated with or connected to CHASETHEMONEY had ever claimed or contended prior to July of 2024 that that J Hill was not CHASETHEMONEY's manager on or before J Hill agreed to the material terms of the Producer Agreement as manager for CHASETHEMONEY.

**V. Cause of Action: Declaratory Relief**

24. An actual controversy has arisen and now exists between Offset and CHASETHEMONEY concerning their respective rights and duties under the Producer Agreement.

25. Offset (and Sallie Smith) alleges and contends that the Producer Agreement is valid and enforceable, and that he has performed and fulfilled all

obligations thereunder, except for those obligations which he has been prevented from performing or fulfilling or those that he is excused from performing or fulfilling. Offset further alleges and contends that J Hill had actual authority to agree to the terms of the Producer Agreement as referenced herein because CHASETHEMONEY intentionally conferred such authority upon J Hill as manager and agent. In the alternative, Offset alleges and contends that J Hill had ostensible authority to agree to the terms of the Producer Agreement as referenced herein because CHASETHEMONEY intentionally or by want of ordinary care, caused and allowed Offset to believe J Hill, as CHASETHEMONEY's manager, possessed the authority to agree to the terms of the Producer Agreement as referenced herein.

26. Offset alleges that CHASETHEMONEY disputes the existence, validity and enforceability of the Producer Agreement, creating uncertainty and insecurity with respect to Offset's rights, remedies and privileges with respect to the Producer Agreement.

27. A judicial declaration is necessary and appropriate at this time so that Offset may ascertain his rights and obligations under the Producer Agreement.

## VI. Prayer for Relief

WHEREFORE, Plaintiff Offset prays for judgment as follows:

1. For a declaration that the Producer Agreement between Offset and Sallie Smith, on the one hand, and CHASETHEMONEY, on the other hand, is valid, binding, and enforceable;

2. For a declaration that J Hill had actual authority to agree to the terms of the Producer Agreement, or in the alternative, that J Hill had ostensible authority to agree to the terms of the Producer Agreement.

3. For a declaration that Offset has performed and fulfilled all obligations under the Producer Agreement, except for those obligations which he has been prevented from performing or fulfilling, or those that he is excused from performing or fulfilling the Producer Agreement.

4. For costs of suit incurred herein.

5. For such other and further relief as the Court deems just and proper.

DATED: March 11, 2025                    FROST BROWN TODD LLP

By: */s/ Rick D. Navarrette*
RICK D. NAVARRETTE
Attorneys for Plaintiffs
KIARI CEPHUS and SALLIE SMITH, LLC

EN21815.Public-21815   4936-8276-8679v2