UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.:  CV 25-02173 AB (RAO) | Date:    April 9, 2026 |
|---|---|

| Title: | *Kiari Cephus et al. v. Chase Dalton Rose et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**    **[In Chambers] Order GRANTING Defendant's Motion to Set Aside Entry of Default [Dkt. No. 32]**

Before the Court is a Motion to Set Aside Entry of Default ("Motion," Dkt. No. 32) filed by Defendant Chase Dalton Rose ("Defendant"). Plaintiffs Kiari Cephus ("Plaintiff Cephus") and Sallie Smith, LLC ("Plaintiff Smith") (collectively "Plaintiffs") filed a timely Opposition ("Opp'n," Dkt. No. 38).[1] This Court found the Motion appropriate for resolution without oral argument and vacated the hearing set for January 30, 2026. *See* Fed. R. Civ. P. 78; Local Rule 7-15. For the following reasons, the Court **GRANTS** Defendant's Motion.

## I.    BACKGROUND

This matter stems from a contract dispute. Plaintiffs' Complaint alleges Defendant entered into an enforceable Producer Agreement ("Agreement") through Defendant's alleged manager and agent, Mr. J. Hill. Compl. ¶ 25, Dkt. No. 1. Additionally, Plaintiff contends Defendant conferred actual authority on Mr. Hill which allowed him to enter into the Agreement with Plaintiffs. *Id.*

---

[1] The Court reviewed Plaintiffs' Objection to Defendant's Declaration in support of this Motion, Dkt. No. 39, and did not rely on any inadmissible evidence.

Plaintiff Cephus is a recording artist and songwriter who was a member of the Atlanta, Georgia-based hip-hop group "Migos" before the group disbanded in 2022. *Id.* ¶ 7.  Plaintiff Sallie Smith LLC is a limited liability company formed in 2017 "to furnish the services of [Plaintiff Cephus] as a recording artist and to engage producers to assist [Plaintiff Cephus] in creating, recording, and producing sound recordings and audiovisual recordings among other materials for commercial release." *Id.* ¶ 8.

While preparing for the album *Set it Off* (the "Album"), Plaintiffs contacted Defendant to discuss the possibility of Defendant producing the track "Worth It" for the Album.  Compl. ¶¶ 11, 12.  Defendant allegedly represented that Mr. J. Hill was his manager and would coordinate logistics.  *Id.* ¶ 13.  Plaintiff Cephus' counsel notified Mr. Hill that he wanted to confirm "producer terms" with Mr. Hill "with the understanding, per industry custom, that these 'producer terms' would be memorialized in a standard long-form producer agreement at a later time."  *Id.* ¶ 15. After negotiations, Plaintiffs allegedly entered into a binding Agreement with Defendant.  *Id.* ¶ 17.  Plaintiffs allege Mr. Hill confirmed Defendant's consent and approval to the Agreement on October 5, 2023, prior to the commercial release of the Album.  *Id.* ¶ 19.  Defendant, however, argues Mr. Hill had no authority to negotiate on his behalf. Mot. at 3.

In January of 2024, Defendant's counsel informed Plaintiff Cephus' counsel that Defendant had a new manager, who attempted to reopen the Agreement negotiations.  Compl. ¶ 20.  Plaintiff Cephus' counsel responded that the Agreement was agreed upon before the Album's release and would not be re-negotiated.  *Id.*  Defendant asserts that he attempted to negotiate producer terms with Plaintiffs after the release of the Album because neither Defendant nor an authorized representative agreed to the original terms.  Mot. at 4.[2]

From February 2024 through July 2024, the Parties exchanged redlined versions of the long-form producer agreement but did not come to a consensus. Compl. ¶¶ 22-23.  Plaintiff alleges that Defendant claimed Mr. Hill was not his manager for the first time in July 2024. *Id.* ¶ 23.

Plaintiffs filed the Complaint on March 11, 2025, with service by email completed on July 31, 2025, *see* Dkt. No. 15.  Four days after Defendant's Answer

---

[2] The Court acknowledges Plaintiffs' Objection to Defendant's Declaration in support of this Motion, Dkt. No. 39, and did not rely on inadmissible evidence in making its decision.

was due, Plaintiffs moved for entry of default against Defendant. Dkt. No. 19.   On September 6, 2025, Defendant retained counsel Mr. Phillips. Mot. at 4. Mr. Phillips was traveling internationally when retained which made communicating with Plaintiffs' counsel, Mr. Navarette, challenging, as evidenced by multiple emails and missed phone calls immediately following Plaintiffs' Request for Entry of Default ("Request"). Mot. at 9.

The clerk entered default against Defendant on September 17, 2025.   Dkt. No. 22.   While Defendant attempted to file his Answer on September 29, 2025, Dkt. No. 25, it was stricken for failure to set aside the underlying default.   Dkt. No. 28. Defendant filed the present Motion on December 17, 2025 seeking to set aside the underlying default. Mot., Dkt. No. 32.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) authorizes a district court to set aside an entry of default for good cause.   Fed. R. Civ. P. 55(c).   Courts generally disfavor default judgments.   *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974). The Ninth Circuit has emphasized that judgment by default "is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."   *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

After a clerk has entered default, the party seeking to set aside the entry of default bears the burden of showing "good cause."   *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).   "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)."   *Id.* at 925. "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment."   *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986).   Accordingly, the Court resolves any doubt regarding whether to grant relief in favor of setting aside the default. *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994).

The "rules for determining when a default should be set aside are solicitous towards movants[.]"   *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1089 (9th Cir. 2010).   To determine "good cause," "a court must 'consider[] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party."   *Id.* at 1091 (quoting *Franchise Holding*, 375 F.3d at 925-26).

"This standard . . . is disjunctive, such that a finding that any one of these [*Falk*] factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.*

## III.   DISCUSSION

Defendant contends that the Court should set aside default here because (1) Defendant and his counsel did not engage in culpable conduct, (2) Defendant has a meritorious defense, and (3) Plaintiffs would not be prejudiced if the default is set aside. The Court agrees with Defendant.

### A. Defendant Did Not Engage In Culpable Conduct.

The first *Falk* factor considers whether a defendant engaged in culpable conduct leading to the default. *Mesle*, 615 F.3d at 1091.  A defendant's conduct is culpable if he received actual or constructive notice of the action and "intentionally" failed to answer. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141 (2001).  To have acted "intentionally," a movant must have acted in bad faith, "such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking or otherwise manipulate the legal process."  *Mesle*, 615 F.3d at 1092 (citations omitted).  Carelessness alone is not sufficient to treat a negligent failure to reply as inexcusable, at least without a consideration that other equitable factors. *TCI Group*, 244 F.3d at 697.

The Court cannot conclude that Defendant's conduct meets the high threshold for intentionality.  While Defendant was served through one of his numerous professional email addresses, he contends that Plaintiffs effectuated service through an email address that was not his primary email address.  Mot. at 4.  He claims that "once [he] had become aware of the ensuing lawsuit, [he] immediately retained local counsel to file a responsive pleading."  Mot., Ex. 2, Rose Decl. ¶ 7.  As default judgments are an "extreme" measure, Defendant's failure to actively monitor all of his email addresses reflects simple carelessness rather than a devious, deliberate, willful, or bad faith failure to respond.  *See TCI Group*, 244 F.3d at 698; *but see Solomon v. Jacobson*, 2016 WL 6156189, at *2 (C.D. Cal. May 25, 2016) (finding the defendant's conduct culpable because he received actual notice of the plaintiff's complaint through email and expressly stated that he intended to ignore the lawsuit because he "couldn't care less").

Additionally, the Court observes that Defendant's status as a legally

unsophisticated litigant requires application of a high bar for intentionality.   A Court may assume intentionality by a party if they are legally sophisticated because an action, like failure to answer after receiving actual notice, is deemed culpable. *See Baker v. Marlo*, 2016 WL 10677596, at *2 (C.D. Cal. Aug. 8, 2016) (citing *Mesle*, 615 F.3d at 1093).   However, when the party "is not a lawyer and [was] unrepresented at the time of the default," Courts apply the intentionality standard articulated in the Ninth Circuit's decision in *TCI Group Life Insurance Plan v. Knoebber*. *Mesle*, 615 F.3d at 1093.

Plaintiffs contend that Defendant is a "sophisticated litigant" because he allegedly intentionally avoided service of process by "hiding behind a locked door and call box" and "engag[ing] in gamesmanship[.]"   Opp'n at 8.   These actions alone are not evidence of "legal sophistication."   Indeed, as noted by other courts, highly unwise actions are not evidence of legal sophistication when there is no logical explanation as to how Defendant could have gained any tactical advantage by allowing the Complaint to go unanswered.   *See Nationwide Prop. & Appraisal Servs., LLC v. Andrews*, 2021 WL 3521007, at *2 (C.D. Cal. May 19, 2021) (finding the defendant's failure to answer the complaint could only harm the defendant by risking a default judgment that would likely impact the defendant's share prices).

Moreover, it is apparent from the record that Defendant tried to file an Answer and engage in good-faith conversations with Plaintiff's counsel.   While counsel dispute the events of September and October 2025, in viewing the evidence in the light most favorable to the motion to set aside default, the Court concludes Defendant's counsel attempted to actively engage with both Plaintiff's counsel and the litigation.   Mot., Decl. of Paul N. Philips.   The evidence does not meet the high burden of "intentionality" required to deny a motion to set aside entry of default.

The Court admonishes Defendant for his failure to answer the Complaint in a timely manner.   Nevertheless, the Court finds the first *Falk* factor weighs in favor of setting aside default.

### B. Defendant Has a Meritorious Defense

The second *Falk* factor assesses the merit of the defendant's defense, if one is available.   *Mesle*, 615 F.3d at 1091.   "To set aside an entry of default, the defendant must provide the Court with specific facts that establish a meritorious defense." *Garcia v. City of Santa Ana*, 2019 WL 6520052, at *3 (N.D. Cal. Sep. 27, 2019) (citing *Franchise Holding*, 375 F.3d at 926).   All that is necessary to satisfy the "meritorious defense" factor is to allege sufficient facts that, if true, would constitute

a defense. "The question whether the factual allegation [i]s true" is not to be determined by the Court when it decides the motion to set aside the default. *TCI Group*, 244 F.3d at 700. Rather, that question "would be the subject of the later litigation." *Id.*

Here, Defendant alleges Mr. Hill was never in contractual privity with him and he never agreed to have Mr. Hill act on his behalf with actual or apparent authority. Mot. at 7-8; *see also Garcia*, 2019 WL 6520052, at *4 (finding the defendant's allegation that he was not in contractual privity with a third party was sufficiently a meritorious defense at this stage in the litigation to weigh in favor of setting aside entry of default judgment).

This allegation is sufficient to meet Defendant's burden at this stage. Plaintiffs claim Defendant does not have a meritorious defense because Mr. Hill allegedly had actual or apparent authority to enter into the Agreement on Defendant's behalf. *See* Opp'n at 14-15. The Parties' statements on the matter of Mr. Hill's involvement and ability to negotiate the Agreement on Defendant's behalf is conflicting. However, at this stage in the litigation, it is enough that Defendant has alleged facts that, if true, could constitute a valid defense to Plaintiff's claims," even if the defense ultimately fails. *Edgen Murray Corp. v. Vortex Marine Constr., Inc.*, 2018 WL 4203801, at *3 (N.D. Cal. June 27, 2018). Thus, the Court finds that Defendant has met his burden under the second *Falk* factor.

### C. Plaintiffs Would Not Be Prejudiced By Setting Aside the Default

The third *Falk* factor asks whether the Plaintiffs would be prejudiced by the Court granting the defendant's motion. "To be prejudicial, setting aside a default must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701. "The standard is whether [plaintiff's] ability to pursue his claim will be hindered." *Falk*, 739 F.2d at 463.

Plaintiffs seek declaratory relief from the Court on three grounds: (1) the Agreement is valid, binding, and enforceable; (2) Mr. Hill had the actual or apparent authority to enter into the Agreement on Defendant's behalf; and (3) Plaintiffs have fulfilled all obligations under the Agreement, except for the obligations Plaintiffs are prevented or excused from fulfilling in the Agreement. Compl. at 7. Plaintiffs argue they are prejudiced because, in filing the Request, they were required to provide their theory of the case to Defendants. Opp'n at 15. This provided Defendants and "unfair litigation advantage." *Id.*

The Court is not persuaded by Plaintiffs arguments. Plaintiffs appear to argue that any litigant who moves for default would be prejudiced if the default were set aside based on information that litigant disclosed in a motion for default judgement. While Plaintiffs needed to include declarations supporting their Request, that would be true of any litigant who moves for entry of default.  In short, by Plaintiffs' argument, motions to set aside default would generally fail to meet this factor. Such an outcome is in direct contention with the applicable legal standard.  *See TCI Group*, 244 F.3d at 701.  Moreover, Plaintiffs have not pointed to any particular declarations or evidence that, since disclosed, would be unfairly prejudicial.  The broad conclusory argument advanced by Plaintiffs cannot meet this factor.

Instead, courts have generally found this factor to be met if the delay resulted in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion."  *See Integrated Sports Media, Inc. v. Mendez*, 2011 WL 2118661, at *3 (N.D. Cal. May 27, 2011) (citing *TCI Group*, 244 F.3d at 701).  Plaintiffs have tried to meet this factor too be broadly alleging that there is a possibility that Defendant will destroy evidence or collude with witnesses to undermine their claims.  Opp'n at 15-16.  Again, this is purely speculatory and conclusory and insufficient to meet the standard for prejudice.

Accordingly, the third *Falk* factor weighs towards setting aside default.

## IV.    CONCLUSION

The Court finds all three *Falk* factors support setting aside the default. Accordingly, the Court **GRANTS** Defendant's Motion to set aside entry of default and **DENIES** Plaintiffs' Motion for Default Judgment as moot.

Defendant is **ORDERED** to file their Answer no later than seven (7) days after the date of this Order.

**IT IS SO ORDERED**.