CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
KEVIN S. DICKER (SBN 179315)
kevin@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Defendant / Counter-Claimant CHASE DALTON ROSE p/k/a "CHASETHEMONEY"

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KIARI CEPHUS, professionally known as "Offset;" and SALLIE SMITH, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> CHASE DALTON ROSE, professionally known as "CHASETHEMONEY," and DOES 1 through 25, inclusive, <br><br> Defendants. <br><br> CHASE DALTON ROSE, professionally known as "CHASETHEMONEY, <br><br> Counterclaimant, <br><br> vs. <br><br> KIARI CEPHUS, professionally known as "Offset;" and SALLIE SMITH, LLC, <br><br> Counterdefendants. | Case No. : 2:25-cv-02173 AB (RAOx) <br><br> **ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND JURY DEMAND OF DEFENDANT CHASE DALTON ROSE P/K/A "CHASETHEMONEY"** |

## ANSWER AND AFFIRMATIVE DEFENSES

## TO PLAINTIFFS' COMPLAINT; COUNTERCLAIMS; JURY DEMAND

Except as expressly admitted herein, Defendant denies each and every allegation of the Complaint and denies that Plaintiffs are entitled to any relief whatsoever. Defendant Chase Dalton Rose, professionally known as "CHASETHEMONEY" ("Defendant"), answers the Complaint as follows:

1. Defendant admits that this action purports to seek declaratory relief pursuant to 28 U.S.C. § 2201. Defendant denies that a valid, binding, and enforceable Producer Agreement exists between Plaintiffs and Defendant, and denies any remaining allegations in this paragraph to the extent they presuppose the existence of such an agreement.

2. Defendant admits only that paragraph 2 purports to invoke 28 U.S.C. § 1332(a). Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 2, and on that basis denies them.

3. Admitted.

4. Defendant admits that Plaintiff Kiari Cephus is professionally known as "Offset" and is an individual. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff Cephus's residence, and on that basis denies them.

5. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5, and on that basis denies them.

6. Admitted.

7. Defendant admits that Plaintiff Cephus is a recording artist and songwriter and was a member of the musical group "Migos." Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 7, and on that basis denies them.

8. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8, and on that basis denies them.

9. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9, and on that basis denies them.

10. Defendant admits that the album entitled Set It Off was released on or about October 13, 2023. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10, and on that basis denies them.

11. Defendant admits that Offset and/or his representatives communicated with Defendant regarding a musical work and sound recording that Plaintiffs sought to include on the Album. Defendant denies that those discussions concerned Defendant producing a sound recording of a musical composition for Offset, as alleged. Defendant further states that, before any such communications, he had already created "Worth It," and that Offset's representatives thereafter approached him about adding Offset's vocals to that existing work. Defendant otherwise denies paragraph 11.

12. Defendant admits that the musical composition and sound recording at issue were ultimately entitled "Worth It." Defendant denies that he produced the Composition or Recording "for Offset," and otherwise denies paragraph 12.

13. Defendant admits that he communicated with Offset's A&R team and referenced J. Hill in connection with logistics relating to the Recording. Defendant denies that he represented that J. Hill was his manager or that J. Hill had authority to negotiate or agree to contractual terms on Defendant's behalf. Defendant otherwise denies paragraph 13.

14. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14, and on that basis denies them.

15. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15, and on that basis denies them.

16. Defendant admits that Plaintiffs and J. Hill exchanged email communications on or about October 5, 2023. Defendant denies that any valid, binding, or enforceable agreement was entered into between Plaintiffs and Defendant,

denies that J. Hill had actual, apparent, or any other authority to negotiate or accept terms on Defendant's behalf, and denies that any communication with J. Hill created or constituted an agreement binding on Defendant. Defendant otherwise denies paragraph 16.

17. Defendant admits that Plaintiffs, through counsel, proposed financial terms concerning a producer fee and royalty. Defendant denies that Defendant or any authorized representative agreed to the terms alleged in paragraph 17, and otherwise denies paragraph 17.

18. Defendant denies that any Producer Agreement existed or that Defendant agreed to perform services or accept compensation on the terms alleged in paragraph 18. To the extent paragraph 18 refers to terms proposed by Plaintiffs, Defendant denies that such terms were accepted by Defendant or any authorized representative. Defendant otherwise denies paragraph 18.

19. Defendant admits that the Album was commercially released and included the Recording. Defendant denies that J. Hill was Defendant's authorized manager or agent, denies that J. Hill had authority to consent to or approve any agreement on Defendant's behalf, denies that Plaintiffs reasonably or justifiably relied on any alleged representation of authority, and otherwise denies paragraph 19.

20. Defendant admits that, in or about January 2024, Defendant's counsel informed Plaintiffs' counsel that Defendant had a new manager, Will Boyette, and that Mr. Boyette proposed producer terms on Defendant's behalf. Defendant further admits that Plaintiffs' counsel rejected those proposed terms. Defendant denies that any prior material terms had been agreed upon, and otherwise denies paragraph 20. Defendant further states that Mr. Boyette's proposal was the first proposal conveyed by a person authorized to act on Defendant's behalf.

21. Defendant admits that Plaintiffs' counsel sent a draft long-form producer agreement to Defendant's counsel in or about February 2024 and that Defendant's counsel responded with a counterproposal. The writings speak for themselves.

3

Defendant denies that Plaintiffs' draft contained previously agreed terms and otherwise denies paragraph 21..

22. Defendant admits that, from approximately February 2024 through July 2024, counsel for the parties exchanged redlined drafts of a proposed long-form producer agreement. Defendant further admits that the parties did not reach agreement on the terms of those proposed drafts. Defendant otherwise denies paragraph 22, including any suggestion that a binding Producer Agreement had previously been formed.

23. Defendant admits that, on or about July 24, 2024, his counsel informed Plaintiffs' counsel that J. Hill was not Defendant's manager in October 2023 and lacked authority to negotiate or bind Defendant. Defendant denies that J. Hill agreed to the material terms of any Producer Agreement on Defendant's behalf. Defendant further denies the allegations that Defendant referred to J. Hill as his manager in various correspondence, directed Plaintiffs or their representatives to discuss clearance of the Recording with J. Hill on Defendant's behalf, that J. Hill confirmed in writing that he represented Defendant as manager, and that no person affiliated with Defendant disputed J. Hill's alleged status before July 2024. Defendant otherwise denies paragraph 23.

24. Defendant admits that an actual controversy exists between the parties. Defendant denies the remaining allegations of paragraph 24, including that the controversy concerns rights and duties under any valid Producer Agreement.

25. Defendant admits that paragraph 25 states Plaintiffs' contentions. Defendant denies each of those contentions and otherwise denies paragraph 25.

26. Defendant admits that he disputes the existence, validity, and enforceability of any alleged Producer Agreement. Defendant denies the remaining allegations of paragraph 26, including that Plaintiffs possess rights, remedies, or privileges under any valid Producer Agreement.

27. Defendant admits that judicial resolution of the parties' dispute is

4

appropriate. Defendant denies the remaining allegations of paragraph 27, including that any declaration is necessary to ascertain rights or obligations under any valid Producer Agreement.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (No Actual Authority)

1. Any purported assent by J. Hill did not bind Defendant because J. Hill lacked actual authority to negotiate or accept contractual terms, or to transfer or encumber any copyright interest, on Defendant's behalf. J. Hill's prior management relationship with Defendant ended in 2019.

## SECOND AFFIRMATIVE DEFENSE

### (No Apparent Authority / No Reasonable Reliance)

2. Plaintiffs cannot enforce any alleged agreement based on apparent authority because Defendant made no manifestation to Plaintiffs that J. Hill was authorized to accept contractual terms or transfer rights on Defendant's behalf. Any reliance by Plaintiffs on J. Hill's purported authority was unreasonable.

## THIRD AFFIRMATIVE DEFENSE

### (No Contract Formation / Lack of Mutual Assent)

3. No enforceable Producer Agreement was formed because Defendant did not assent to the alleged terms, and no authorized agent assented on his behalf. In addition, the parties did not reach agreement on all material terms necessary to form a binding contract.

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

4. The Complaint, and each purported basis for declaratory relief therein, fails to state facts sufficient to establish the existence of a valid and enforceable Producer Agreement binding on Defendant or facts entitling Plaintiffs to the declarations they seek.

## FIFTH AFFIRMATIVE DEFENSE

### (Ratification)

5. Defendant did not ratify any alleged Producer Agreement. Defendant's later efforts, through authorized representatives, to negotiate possible producer terms did not adopt, confirm, or ratify any prior unauthorized communication or purported agreement attributed to J. Hill.

## SIXTH AFFIRMATIVE DEFENSE

### (Estoppel)

6. Plaintiffs are estopped from asserting that any alleged Producer Agreement is enforceable against Defendant because Plaintiffs knew, or reasonably should have known, that J. Hill lacked authority to bind Defendant, yet proceeded without obtaining Defendant's assent or a signed agreement.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

7. To the extent Plaintiffs seek equitable relief, their claims are barred, in whole or in part, by the doctrine of unclean hands. Plaintiffs seek equitable relief based on an alleged agreement that was not authorized by Defendant, while exploiting Defendant's contributions to the Recording without paying him.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure of Consideration)

8. To the extent any agreement existed, Plaintiffs failed to provide the consideration allegedly promised thereunder, including any producer fee or royalty payment. Accordingly, any such agreement is unenforceable, or Defendant's performance is excused, in whole or in part, for failure of consideration.

## NINTH AFFIRMATIVE DEFENSE

### (No Valid Written Transfer or Work-Made-for-Hire Agreement)

9. To the extent Plaintiffs contend that any alleged Producer Agreement transferred, assigned, or exclusively licensed any copyright interest held by

6

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND JURY DEMAND OF DEFENDANT CHASE DALTON ROSE P/K/A "CHASETHEMONEY"

Defendant, or rendered Defendant's contribution a specially ordered or commissioned work made for hire, such contention fails because no written instrument signed by Defendant, or by any duly authorized agent of Defendant, memorializes any such transfer or agreement. Any alleged transfer or work-made-for-hire designation is therefore ineffective under 17 U.S.C. §§ 101, 201(b), and 204(a).

## TENTH AFFIRMATIVE DEFENSE

### (Failure of Condition Precedent)

10.     To the extent Plaintiffs contend that preliminary producer terms created a binding agreement, execution of a mutually acceptable long-form producer agreement was a condition precedent to any final and enforceable agreement between the parties. That condition did not occur.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Waiver)

11.     To the extent any agreement existed, Plaintiffs waived strict enforcement of its alleged terms by failing to tender the producer fee or royalties they contend were due and by continuing to negotiate material terms of a proposed long-form producer agreement after the Album's release.

DATED:  April 16, 2026            FROST LLP

By: _____
CHRISTOPHER FROST
KEVIN S. DICKER
Attorneys for Defendant / Counter-
Claimant CHASE DALTON ROSE p/k/a
"CHASETHEMONEY"

7

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND JURY DEMAND OF DEFENDANT CHASE DALTON ROSE P/K/A "CHASETHEMONEY"

## COUNTERCLAIMS

Counterclaimant Chase Dalton Rose, professionally known as "CHASETHEMONEY" ("Counterclaimant"), for his counterclaims against Counter-Defendants Kiari Cephus, professionally known as "Offset," and Sallie Smith, LLC (collectively, "Counter-Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over Counterclaimant's declaratory-relief counterclaim under 28 U.S.C. §§ 1331 and 1338(a) because that counterclaim arises under the Copyright Act, 17 U.S.C. §§ 101, 201, and 204.

2. This Court has supplemental jurisdiction over Counterclaimant's remaining counterclaims under 28 U.S.C. § 1367(a) because those counterclaims form part of the same case or controversy as Plaintiffs' claims and Counterclaimant's copyright-based declaratory-relief counterclaim.

3. Venue is proper in this District because Plaintiffs commenced this action in this District and Counterclaimant's counterclaims arise out of the same transaction or occurrence alleged in the Complaint.

## PARTIES

4. Counterclaimant Chase Dalton Rose, professionally known as "CHASETHEMONEY," is an individual and music producer.

5. Counter-Defendants Kiari Cephus, professionally known as "Offset," is an individual, and Sallie Smith, LLC is a limited liability company.

## GENERAL ALLEGATIONS

6. Before the version of "Worth It" released on the album Set It Off, Counterclaimant had created and commercially released a version of "Worth It" in his own name (the "Original Release").

7. Thereafter, representatives of Offset contacted Counterclaimant regarding use of Counterclaimant's preexisting work in connection with Set It Off, which was released on or about October 13, 2023.

8

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND JURY DEMAND OF DEFENDANT CHASE
DALTON ROSE P/K/A "CHASETHEMONEY"

8. Counterclaimant alleges that those representatives sought to have Offset record vocals over Counterclaimant's existing production and requested that Counterclaimant take down the Original Release.

9. Upon information and belief, Sallie Smith, LLC was the entity through which Offset's recording services in connection with the New Work were furnished and through which producer arrangements and payments relating to the New Work were to be handled. Upon information and belief, Sallie Smith participated in and benefitted from the release and exploitation of the New Work.

10. Counterclaimant took down the Original Release.

11. Before release of the version of "Worth It" appearing on Set It Off (the "New Work"), the parties had not entered into a final binding agreement governing compensation, ownership, or transfer of rights.

12. Counter-Defendants thereafter released and exploited the New Work without paying Counterclaimant compensation for the services, contributions, and value Counterclaimant alleges he provided.

13. Counter-Defendants have credited Counterclaimant on streaming platforms as a writer and producer of "Worth It."

14. An actual controversy exists concerning whether any binding producer agreement was formed, whether Counterclaimant transferred any copyright interest, what ownership rights, if any, Counterclaimant retains, and what compensation, if any, is owed to him.

## FIRST COUNTERCLAIM

## (Declaratory Relief — Copyright Ownership / No Valid Transfer)

## (Against All Counter-Defendants)

15. Counterclaimant realleges and incorporates by reference paragraphs 1 through 14 as though fully set forth herein.

16. Counterclaimant created original, copyrightable preexisting production embodied in the track later released as the New Work, including the beat and other

9

original recorded production elements fixed before Offset's later-recorded vocals.

17.    Counter-Defendants later released and exploited the New Work using Counterclaimant's preexisting production.

18.    No written instrument signed by Counterclaimant, or by any duly authorized agent of Counterclaimant, transferred, assigned, or exclusively licensed Counterclaimant's copyright interests in those contributions, or provided that those contributions were a work made for hire.

19.    The New Work combines Counterclaimant's preexisting production with later-recorded vocals by Offset in a single commercially released sound recording.

20.    Counterclaimant contends that, if the facts establish the intent required by 17 U.S.C. § 101, the New Work constitutes a joint work and Counterclaimant is a co-owner under 17 U.S.C. § 201(a).

21.    Alternatively, if the New Work is not a joint work, Counterclaimant nonetheless retained ownership of his separately copyrightable contributions because no valid written transfer occurred under 17 U.S.C. § 204(a).

22.    An actual controversy exists between the parties concerning whether Counterclaimant transferred any copyright interest, whether the New Work is a joint work, and what ownership interests, if any, Counterclaimant retains in the New Work.

23.    Counterclaimant therefore seeks a declaration that: (a) no valid written transfer or work-made-for-hire agreement divested Counterclaimant of any copyright interest in his contributions to the New Work; and (b) Counterclaimant retains the ownership interest in those contributions established by the facts and applicable law, including any co-ownership interest in the New Work if joint authorship is proven.

## SECOND COUNTERCLAIM

### (Quantum Meruit / Restitution, in the Alternative)

### (Against All Counter-Defendants)

24.    Counterclaimant realleges and incorporates by reference paragraphs 1

10

through 23 as though fully set forth herein.

25.    At Counter-Defendants' request, Counterclaimant furnished valuable music production services and related benefits used in connection with the New Work.

26.    At Counter-Defendants' request, Counterclaimant also took down the Original Release to facilitate release and exploitation of the New Work.

27.    Counter-Defendants knowingly accepted, used, and benefitted from Counterclaimant's services and related benefits.

28.    Counterclaimant reasonably expected to be compensated if his services and contributions were used in the New Work.

29.    Counter-Defendants have not paid Counterclaimant the reasonable value of those services and related benefits.

30.    This counterclaim is pleaded in the alternative to the extent no enforceable agreement governs Counterclaimant's right to payment.

31.    As a direct and proximate result of Counter-Defendants' conduct, Counterclaimant has been damaged in an amount to be determined at trial.

### THIRD COUNTERCLAIM

### (Accounting, Equitable)

### (Against All Counter-Defendants)

32.    Counterclaimant realleges and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

33.    To the extent Counterclaimant is found to retain an ownership interest in the New Work or to be entitled to payment in connection with it, the amount of revenues, deductions, credits, advances, and other consideration attributable to the New Work cannot be ascertained without an accounting.

34.    The relevant books, records, statements, agreements, and accounting information concerning exploitation of the New Work are within Counter-Defendants' possession, custody, or control, or within the possession, custody, or control of persons or entities acting on their behalf.

11

35. Counterclaimant has no adequate means, absent an accounting, to determine the amounts attributable to the New Work or any amounts owing to him.

36. An accounting is therefore necessary to determine the amounts, if any, due to Counterclaimant in connection with the New Work.

37. Counterclaimant therefore seeks an accounting of monies and other consideration attributable to the New Work, together with payment of any amounts found due.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant prays for judgment against Counter-Defendants as follows:

A. For a declaration that no valid written transfer or work-made-for-hire agreement divested Counterclaimant of any copyright interest in his contributions to the New Work;

B. For a declaration that Counterclaimant retains the ownership interest in his contributions to the New Work established by the facts and applicable law, including any co-ownership interest in the New Work if joint authorship is proven;

C. For restitution / quantum meruit damages in an amount to be determined at trial;

D. For an equitable accounting of monies and other consideration attributable to the New Work, together with payment of any amounts found due;

E. For pre-judgment and post-judgment interest as permitted by law;

F. For costs of suit and attorneys' fees to the extent permitted by applicable law; and

G. For such other and further relief as the Court deems just and proper.

12

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND JURY DEMAND OF DEFENDANT CHASE DALTON ROSE P/K/A "CHASETHEMONEY"

DATED:  April 16, 2026          FROST LLP

By: _____

CHRISTOPHER FROST

KEVIN S. DICKER

Attorneys for Defendant / Counter-

Claimant CHASE DALTON ROSE p/k/a

"CHASETHEMONEY"

13

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND JURY DEMAND OF DEFENDANT CHASE DALTON ROSE P/K/A "CHASETHEMONEY"

## **DEMAND FOR JURY TRIAL**

Counterclaimant demands a trial by jury on all issues so triable pursuant to Federal Rules of Civil Procedure, Rule 38(b).

DATED:  April 16, 2026                    FROST LLP


By: _____

CHRISTOPHER FROST

KEVIN S. DICKER

Attorneys for Defendant / Counter-

Claimant CHASE DALTON ROSE p/k/a

"CHASETHEMONEY"

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND JURY DEMAND OF DEFENDANT CHASE DALTON ROSE P/K/A "CHASETHEMONEY"

## <u>ATTESTATION</u>

Pursuant to Local Rule 5-4.3.4(2)(i), I, Kevin S. Dicker attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  April 16, 2026

By: _____

15